IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hospital of the University of : 
Pennsylvania, :
          Petitioner :
           :
          v. : No. 2291 C.D. 2015
           : Submitted: April 22, 2016
Workers' Compensation Appeal :
Board (Maratea), :
          Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: May 13, 2016

The Hospital of the University of Pennsylvania (Employer) petitions for review of the Workers' Compensation Appeal Board's (Board) decision reversing a Workers' Compensation Judge's (WCJ) order granting Employer's termination petition. The Board did so because it found that the WCJ erred in determining that a corrected Notice of Compensation Payable (NCP) rather than the original NCP was the controlling document and, because the WCJ did not find that all of the accepted injuries in the corrected NCP had been addressed, Antonio Maratea's (Claimant) benefits had not been terminated.

**I.**

Claimant worked as a senior accountant for Employer for over a decade. In February 2010, Employer issued him a "medical only" Notice of Temporary Compensation Payable (NTCP) under the Workers' Compensation Act (Act)[1] for a "right wrist/right shoulder strain/strain" caused from "repetitive motion typing on computer." (Reproduced Record (R.R.) at 1a.) The NTCP indicated that payments to Claimant began as of February 25, 2010, and would end after a 90-day period on May 25, 2010.

On July 9, 2010, in accordance with the Act, the NTCP was automatically converted to an NCP.[2] On December 6, 2010, a corrected NCP was issued changing the description of Claimant's injury to a "right wrist strain/tendonitis" and eliminating any mention of any shoulder injury. It also increased Claimant's weekly compensation rate and average weekly wage. A supplemental agreement for compensation for disability or permanent injury was later issued, restating Claimant's injury as "right wrist strain/tendonitis" and establishing that Claimant's disability recurred on March 23, 2011.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708.

[2] Pursuant to Section 406.1(d)(6) of the Act, "If the employer does not file a notice [controverting a claimant's claim] within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable." Section 406.1(d)(6) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §717.1(d)(6).

In October 2012, Employer filed a termination petition alleging that Claimant fully recovered from his work-related injuries as of September 5, 2012, and requesting that a special supersedeas hearing be scheduled based upon a physician's affidavit. The termination petition averred that Claimant was being paid pursuant to the original NCP. In March 2013, the parties litigated before the WCJ three Utilization Review (UR) Petitions filed by Claimant, which the WCJ denied. In these Petitions, the WCJ mentioned that she was considering the corrected NCP the controlling document.[3]

In May 2013, Claimant then filed a petition to review compensation benefits alleging that the description of his injury was incorrect and seeking to amend the NCP "to include impingement syndrome with rotator cuff tear, right

---

[3] The UR Petitions litigated were concerning: 1) treatment by Thomas Kiger, PT (Kiger), which was deemed reasonable and necessary in part; 2) treatment by Johnmichael Pizzimenti, D.C. (Pizzimenti), which was deemed not reasonable and not necessary; and 3) treatment by William Ingram (Dr. Ingram), D.O., which was deemed not reasonable and not necessary.

After holding three hearings and considering Claimant's testimony in conjunction with other evidence (including reports of several medical providers submitted by both parties), the WCJ denied all three UR Petitions. In making her determination, the WCJ found Claimant's testimony regarding his need for physical therapy, chiropractic treatment or other treatment rendered by Dr. Ingram's office to be incredible. Based on the reports, the WCJ also found treatment by a number of the medical professionals to be not reasonable and not necessary. Finally, the WCJ reasoned that Employer's contest was reasonable due to the conflicting medical opinions. Kiger, Pizzimenti and Dr. Ingram (collectively, Providers) appealed, arguing that the WCJ erred in accepting the "Corrected" NCP.

The Board dismissed the Providers' appeal, determining that the Providers were not parties to the matter below and, thus, have no standing to appeal. Moreover, the Board held that even if Providers' limited participation by providing reports in the matter below somehow gave them party status, the issues they raised on appeal were never raised or addressed before the WCJ and were thereby waived.

shoulder; post traumatic arthropathy of the right acromioclavicular joint and glenohumeral joint; right biceps tendonitis; right wrist intracapsular ganglion; flexor and extensor tenosynovitis of both wrists and intracapsular ganglion based on tenosynovitis of the right radiocarpal joint."[4] (R.R. at 16a.)

## II.

## A.

Claimant's testimony was offered in both his case and Employer's. In support of his positions, Claimant testified that he worked as a senior accountant for Employer for over a decade, during which he worked at a desk, and that the repetitive nature of his job eventually caused him to experience pain in his right wrist and right shoulder. He testified that he had two ergonomic evaluations of his work station but not all of the recommended changes were implemented, and he eventually underwent medical treatment due to the continuing issues with his wrist and shoulder. Claimant stated that he then started developing pain in his left wrist. He testified to reducing the number of days he worked and stated that he eventually stopped working for Employer on March 23, 2011, because of the pain in his wrists and right shoulder and has not worked since.

Claimant testified that he is currently being treated for his pain, takes Ambien to sleep and Hydrocodone for pain, and also wears wrist braces almost

---

[4] Claimant stated in his review petition that compensation benefits were being paid based on the corrected NCP.

every day. Claimant testified that he does not think that he can return to work as an accountant because he cannot use the keyboard and mouse six hours per day.

In his deposition testimony that Employer offered, Claimant testified to continued pain in his right wrist. On a scale of one to ten, Claimant rated the pain at a two when on therapy and medication, and varying from a six to a nine without. Claimant again stated that he had not fully recovered from his work injury because he still experienced pain in both of his wrists and his right shoulder. He explained that the pain in his left wrist started at the same time as the pain in his right wrist and shoulder.

He stated that he has not worked anywhere since working for Employer. He testified that his daily activities include watching a lot of television, cooking and doing housework. He testified that although he occasionally goes grocery shopping, he has problems lifting and can only carry one bag. Claimant stated that he uses his home computer for approximately half-an-hour per day to look at e-mails. Claimant admitted taking several vacations since March 2012, including trips to Orlando, FL, Newport, RI, Las Vegas, NV, and Poconos, PA. He stated that he had been receiving disability social security since September 2012.

**B.**

In support of its termination petition, Employer submitted the deposition of William Kirkpatrick, M.D. (Dr. Kirkpatrick), a board certified orthopedic surgeon with an added qualification in hand and upper extremity

5

surgery. Based on his physical examination of Claimant, which focused solely on Claimant's hands and wrists, Dr. Kirkpatrick noted that Claimant had some fullness over both wrists, more on the right, but otherwise no swelling. He testified that Claimant had full active range of motion of the elbows and no tenderness on palpation, full active rotation in both forearms, and range of motion in both wrists of about 50 degrees extension and flexion "which is certainly within a functional range of motion." (R.R. at 183a.) He stated that although Claimant complained of discomfort with palpation over his dorsal radial right wrist and over the radioscaphoid articulation, he did not find any tenderness with palpation over the left dorsal radial wrist or first compartment.

Dr. Kirkpatrick diagnosed Claimant with bilateral wrist osteoarthritis with right deQuervain's tenosynovitis. He opined that the deQuervain's tenosynovitis may have been related to his repetitive activities as an accountant, but that he did not find any evidence of deQuervain's. Dr. Kirkpatrick acknowledged that Claimant had tenderness in the same relative area as his prior deQuervain's and that he believes it is related to Claimant's underlying osteoarthritic condition. He testified that while a 2013 ultrasound of the right wrist did not demonstrate evidence of deQuervain's, it did reveal a small ganglion cyst in the radial carpal joint, which was aspirated and injected. He explained that ganglion cysts are typically idiopathic and are seen frequently with osteoarthritic conditions.

Dr. Kirkpatrick opined that Claimant had fully recovered from the work-related injury of right wrist inflammation from repetitive typing, including

any deQuervain's tenosynovitis, which may have been caused or aggravated by his job duties. He testified that Claimant's right wrist pain was related to his preexisting osteoarthritic condition, especially given that he had not worked as an accountant for nearly three years and, moreover, "there would be no reason to expect that he would develop a deQuervain's tenosynovitis, especially in light of the more significant condition which is his underlying condition of the wrist." (*Id.* at 191a.) Dr. Kirkpatrick opined that given the absence of the work injury, Claimant would be capable of returning to work as an accountant, but because of the clear arthritis in both of his wrists, it would be reasonable for him to limit his repetitive activities. He stated that no further treatment was required for Claimant's work-related injury.

In opposition to Claimant's review petition, Employer submitted the deposition of Robert Dalsey, M.D. (Dr. Dalsey), a board certified orthopedic surgeon with a certificate of qualification in hand surgery who examined Claimant in October 2013. Dr. Dalsey testified that his physical examination of Claimant showed that Claimant was 5'1" and 271 pounds; that his right shoulder revealed no tenderness over the AC joint but pain anteriorly along the glenohumeral joint line; that he did not have an arc of pain, which is seen in primary rotator cuff problems; that he had restricted motion internally and externally; that in his left wrist, he had pain and swelling over the radioscaphoid area; that motion was restricted to 30 degrees of wrist extension and flexion, less than half what would be normal for his age; that his symptoms were similar in the right wrist; and that sensation was normal with the exception of tingling in his left fifth finger.

7

Upon review of several MRIs and ultrasounds, Dr. Dalsey testified that Claimant's wrists were affected by arthritis that was worsening over time, which explained why his wrists have remained problematic even after he stopped working. He explained that although arthritis can cause swelling and discomfort, it is not the result of repetitive tasks and there is no evidence of work-related traumatic arthritis in Claimant's medical records. Dr. Dalsey opined that Claimant's right shoulder injury was related to degenerative changes and arthritis and not caused by Claimant's work duties. He stated that Claimant did not sustain a right shoulder work-related injury or a left wrist work-related injury. He further stated that although Claimant may have had tendinitis in his right wrist related to the repetitive nature of his work, it had resolved.

## C.

In opposition, Claimant submitted the deposition of Scott Jaeger, M.D. (Dr. Jaeger), a board certified orthopedic surgeon who first saw Claimant in March 2013. At that time, Claimant told him that he was having issues with his right shoulder and wrist beginning in February 2010 because of his work as a senior accountant for Employer. Dr. Jaeger testified that they discussed Claimant's work station, noting that Claimant's printer was above his head, that his feet did not touch the floor, and that Employer often had him working more than eight hours a day. Dr. Jaeger opined that Claimant's symptoms were related to his level of work and caused the development of his tendinitis.

Dr. Jaeger testified that he reviewed records from Dr. Behrman, Dr. Chen, Dr. Osterman, Dr. Ingram and Dr. Kirkpatrick, as well as two ergonomic

studies from Mr. Song. Dr. Jaeger testified that he relied on the results of MRIs of Claimant's right wrist and shoulder in developing his opinions, and that a right wrist MRI showed severe tendinosis, particularly in the first distal radioulnar compartment. A right shoulder MRI showed marked degenerative disease in the acromioclavicular joint causing a spur that resulted in a very severe tendinopathy or tendinitis along with tears of the supraspinatus, the infraspinatus and the subscapularis tendon, indicating that Claimant "had significant rotator cuff tendinosis or tendinitis as a result of repetitive use of his arm level to the mid[-]chest level to retrieve the results of the printer." (*Id.* at 241a.) With regard to the ergonomic studies, Dr. Jaeger testified that they were consistent with Claimant's depiction of his work station.

Based on his physical examination of Claimant, Dr. Jaeger testified that Claimant had a 20 percent loss of grip strength on the right; there was a high degree of crepitus in his right shoulder, indicating that the AC joint was unstable and that abduction and flexion were limited; and there was evidence of widespread tenosynovitis in both the flexor and extensor tendons, as well as instability of the carpal bones. Dr. Jaeger testified that his diagnosis as to Claimant's condition was that Claimant had an intracapsular ganglion in the right wrist and tenosynovitis in both wrists. He stated that there was some improvement of Claimant's deQuervain's tenosynovitis since Claimant had stopped working. He opined that his diagnosis of Claimant was related to the work injury. He also stated that Claimant had tears of the supraspinatus and infraspinatus of his right shoulder, which were causally related to the work injury. Dr. Jaeger opined that Claimant had not fully recovered from his right wrist strain/tendonitis and/or shoulder strain.

9

He concluded that Claimant was not capable of returning to work for Employer as an accountant.

## III.

Finding Dr. Kirkpatrick's and Dr. Dalsey's testimonies that Claimant's right wrist did not show signs of tenosynovitis to be the most credible and concluding that Claimant had fully recovered from his work injury of right wrist strain/tendonitis as of September 5, 2012, the WCJ granted Employer's termination petition and denied Claimant's petition to review compensation. The WCJ reasoned that Dr. Kirkpatrick and Dr. Dalsey's opinions were consistent internally and with each other, and consistent with the diagnostic studies. She accepted that Claimant's job duties may have temporarily aggravated the pre-existing osteoarthritis in his right wrist, but found incredible Dr. Jaeger's opinion that Claimant's problems in both wrists and right shoulder resulted from repetitive motions at a job Claimant has not performed since March 2011.

Claimant appealed to the Board, arguing that the WCJ erred in granting Employer's termination petition because she found the corrected NCP, not the original NCP, to be the operative document and determined Claimant to be fully recovered from his right wrist strain/tendonitis based on this document. Claimant argued, however, that the NTCP had already converted to the NCP, and that Employer did not have the right to "unilaterally change the description of injury and delete a body part in an injury it had already accepted." (Board Appeal at 2.) Moreover, Claimant contended that neither Dr. Kirkpatrick nor Dr. Dalsey found that Claimant had fully recovered from his accepted right shoulder strain

10

given that Dr. Kirkpatrick failed to render an opinion concerning Claimant's right shoulder strain and Dr. Dalsey only opined that Claimant never had a work-related shoulder injury, not that Claimant had fully recovered from any work-related shoulder injury.

The Board reversed with regard to the WCJ's grant of Employer's termination petition, finding that the WCJ erred in determining the operative document was the corrected NCP and that Claimant's recognized injury only included right wrist sprain/tendonitis. As such, the Board found that Employer did not meet its burden of proving that Claimant was fully recovered from all aspects of his recognized injury as established by the original NCP. In making its determination, the Board explained:

> [Employer] initially filed an NTCP on March 15, 2010, which recognized Claimant's injury as a right wrist/right shoulder strain/sprain.[5] Pursuant to Section 406.1 of the Act, 77 P.S. § 717.1, [Employer] had 90 days in which to either revoke this NTCP or else it converted by operation of law into a fully binding NCP. [Employer] failed to issue any document revoking the NTCP within that 90 day time period, thus, on June 13, 2010 the NTCP converted to an NCP and [Employer] became liable for Claimant's right wrist *and* right shoulder strain/sprain. While [Employer] later issued a NCP on July 9, 2010, which did not include a right shoulder injury, this was issued outside the original 90 day period. Consequently, that second NCP did not supersede the converted NCP, as [Employer] can not [sic] unilaterally change the

---

[5] We note that although the Board repeatedly states that the NTCP classified Claimant's injury as a "right wrist/right shoulder strain/*sprain*," the NTCP actually refers to it as a "strain/*strain*."

11

> description of an injury it has already accepted. Therefore, the accepted description of Claimant's work injury included a right shoulder strain/sprain in addition [to] his right wrist injury and [Employer] was required to produce an unequivocal medical opinion that Claimant was also fully recovered from that right shoulder injury to be entitled to a termination of benefits.

(Petitioner's Brief at App-24) (emphasis in original). The Board agreed with Claimant that neither of Employer's medical experts, Dr. Kirkpatrick or Dr. Dalsey, gave adequate testimony to establish that Claimant had fully recovered from his entire work-related injury. Employer appealed.[6]

## IV.

## A.

The central issue on appeal is whether the original NCP, which listed a shoulder strain, or the corrected NCP, which did not, is controlling. Employer does not contest that if the issue has not been waived, the original NCP is controlling and benefits should not be terminated. Employer argues, though, that the issue has been waived and that the corrected NCP controls because Claimant

---

[6] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 799 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

12

did not appeal the WCJ's finding that the corrected NCP was the controlling document after the WCJ's previous decision concerning the UR Petitions. Claimant asserts, however, that the WCJ did not make a finding of fact specifically regarding the effect of the original NCP or that the corrected NCP superseded the original and was controlling, but only noted "in passing"[7] in a footnote that it "appeared" that the corrected NCP was controlling.

While Employer couches Claimant's failure to appeal the UR Petition denials in which the WCJ mentioned "in passing" that the controlling document was the corrected NCP as one of waiver, waiver is not applicable because the doctrine involves a failure to raise an issue. In this case, absent the UR Petition denials, the Claimant could have raised the issue of whether the WCJ improperly used the corrected NCP to determine the accepted injuries. In effect, what Employer is contending by stating that Claimant cannot raise this issue because he failed to appeal the UR Petition denials is that the issue is barred by collateral estoppel.

---

[7] In the footnote in question in her previous decision, the WCJ stated:

> Claimant testified about, and the treatment in question was primarily for, the right wrist and shoulder. Although [UR] petitions address only the reasonableness and necessity of medical treatment and not the nature of the work injury or the causation of the condition at issue. ... I note in passing that the controlling bureau document appear[s] to be a "Corrected" Notice of Compensation Payable issued on December 6, 2010 accepting only a "right wrist strain/tendonitis" ... The Supplemental Agreement for recurrence of total disability contains the same description of the accepted injury.

(R.R. at 29a) (citations omitted).

13

Under the doctrine of collateral estoppel, "where particular questions of fact that are essential to the judgment are actually litigated and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action." *Krouse v. Workers' Compensation Appeal Board (Barrier Enterprises, Inc.)*, 837 A.2d 671, 675 (Pa. Cmwlth. 2003) (citation omitted). However, the judgment in the previous action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment; and (4) were material to the adjudication. *Id.* at 675-76.

In this case, the comment by the WCJ in a footnote that "I note in passing that the controlling bureau document appear[s] to be a 'Corrected' Notice of Compensation Payable" is not sufficient for the doctrine of collateral estoppel to apply because whether the original or corrected NCP applied was not actually litigated and that determination was not essential or material to the judgment. (R.R. at 29a.) Accordingly, Claimant did not "waive" this issue, and because the original NCP controls, the termination petition for the shoulder injury should not have been granted.

**B.**

Employer contends that even if the original NCP controls and benefits should continue because it failed to establish that work-related injuries to Claimant's shoulder had resolved, benefits should be terminated for injuries relating to his wrist because the WCJ found that Claimant had fully recovered from his work-related injuries. In establishing its termination petition, the employer

14

bears the burden of proving that the claimant's work injury has ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Where the claimant complains of continuing pain, the employer's burden is met when its "medical expert unequivocally testifies that it is his opinion … that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Id.* In this case, Claimant has not contested on appeal the WCJ's finding that those injuries have ceased, only that Employer has failed to show that the injuries to his shoulder have ceased. Moreover, there is substantial evidence to support a determination that those injuries have ceased.

Accordingly, we affirm the Board's decision to the extent it reversed the WCJ's decision terminating benefits for the accepted shoulder injury in the original NCP, but reverse the Board's reversal of the WCJ's decision to terminate benefits for injuries Claimant sustained to his wrist.

_____
DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hospital of the University of    :
Pennsylvania,    :
        Petitioner    :
    :
      v.    : No. 2291 C.D. 2015
    :
Workers' Compensation Appeal    :
Board (Maratea),    :
        Respondent    :

# **O R D E R**

AND NOW, this 13th day of May, 2016, the order of the Workers' Compensation Appeal Board dated October 28, 2015, is affirmed in part and reversed in part. We affirm that portion finding that benefits should not be terminated for Antonio Maratea's shoulder injury, but reverse that portion finding that benefits should not be terminated for injuries related to his wrist.

_____
DAN PELLEGRINI, Senior Judge